IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 30, 2010

## STATE OF TENNESSEE v. DARIUS L. BROWN

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S55,544-547; S56,028    Robert H. Montgomery, Jr., Judge**

---

**No. E2009-01032-CCA-R3-CD - Filed May 14, 2010**

---

The Defendant-Appellant, Darius L. Brown, entered eleven guilty pleas in five different cases in the Sullivan County Criminal Court. He received an effective nine-year sentence at thirty percent pursuant to his plea agreement, with the manner of service of his sentence to be determined by the trial court. On appeal, Brown argues that the trial court abused its discretion by denying an alternative sentence. Upon review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Stephen M. Wallace, District Public Defender; Deborah Black-Huskins Lonon, Assistant Public Defender, Blountville, Tennessee, for the Defendant-Appellant, Darius L. Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Kent L. Chitwood, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

**Guilty Plea Hearing.** At the February 27, 2009 guilty plea hearing, Brown stipulated to the facts in the affidavits of complaint and the arrests warrants in case numbers S55,544; S55,545; and S55,547. The State then outlined the facts supporting Brown's guilty pleas regarding the felony failure to appear offense in case number S55,546 and the sale and delivery of cocaine offenses in case number S56,028:

[T]he State's proof in S55,546 would be that having been lawfully released from custody on condition of a subsequent appearance in an official proceeding the defendant failed to appear in the General Sessions Court for Sullivan County in Bristol, Tennessee on July [7], 2008 for the purpose of a hearing in Case S219922, which was a felony offense of aggravated burglary and that would be the State's proof in the case.

The State's proof in S56,028 would be that three buys of crack cocaine were made from the defendant. All of these buys were made within the boundaries of Sullivan County. The first one was made on January [14], 2008 where an informant was provided with $100.00 to make a purchase. After receiving the money from the law enforcement he encountered the defendant, got into the back seat of the – or the defendant got into the back seat of the informant's vehicle, while driving the defendant handed the informant the crack cocaine for the $100.00. This occurred on East Mary Street and there's a video and audio of that transaction.

On July [15], 2008, an informant made a recorded phone call to the defendant and agreed to meet in the area of 835 East Mary Street. The informant was provided with $100.00 to purchase crack cocaine. The informant then drove to the area of East Mary Street. The defendant got into the passenger seat of the vehicle. The informant drove down East Mary Street, handed the defendant $100.00 and the defendant handed the informant what later was tested to be crack cocaine.

The third buy took place on July [16], 2008. The informant made a couple of recorded phone calls to the defendant and agreed to meet him in the area of 835 East Mary Street. He was provided with $200.00 for the purchase of crack cocaine. While [e]n route to East Mary Street the informant observed the defendant walking on East State Street. The defendant got into the informant's vehicle. The informant handed him the money and the defendant handed him the crack cocaine.

In each occasion all this was recorded on video and audio in all three buys. The drugs were sent off to the Tennessee Bureau of Investigation and in each case did test positive for crack cocaine in the amount of over [a] half gram. And that would be the State's proof in all three of those buys.

Brown acknowledged that the facts in the affidavits of complaint and the arrests warrants in case numbers S55,544; S55,545; and S55,547 and the State's summary of the facts in case numbers S55,546 and S56,028 were true. He then entered guilty pleas to the following offenses and received the following sentences pursuant to his plea agreement:

Case Number S55,544 – Date of Offense: 6-30-08
Count 1- Aggravated Burglary (Class C felony)          3 years, Range I
Count 2- Telephone Harassment (Class A misd.)          11 months, 29 days
Count 3- Vandalism (Class A misd.)                     11 months, 29 days

Case Number S55,545 – Date of Offense: 7-1-08
Count 1- Simple Poss. of Cocaine (Class A misd.)       11 months, 29 days
Count 2- Simple Poss. of Marijuana (Class A misd.)     11 months, 29 days

Case Number S55,546 – Date of Offense: 7-7-08
Count 1- Felony Failure to Appear (Class E felony)     1 year, Range I

Case Number S55,547 – Date of Offense: 7-18-2008
Count 1- Simple Poss. of Marijuana (Class A Misd.)     11 months, 29 days
Count 2- Simple Poss. of Cocaine (Class A Misd.)       11 months, 29 days

Case Number S56,028
Date of Offense: 7-14-08
Count 1- Sale over .5 gram of Cocaine (Class B felony)    8 years, Range I
Count 2- Delivery of over .5 gram of Cocaine - Merged with Count 1

Date of Offense: 7-15-08
Count 3- Sale over .5 gram Cocaine (Class B felony)        8 years, Range I
Count 4- Delivery of over .5 gram of Cocaine - Merged with Count 3

Date of Offense: 7-16-08
Count 5- Sale over .5 gram Cocaine (Class B felony)        8 years, Range I
Count 6- Delivery of over .5 gram of Cocaine - Merged with Count 5

Each of the counts within a case number was to be served concurrently. The sentences in case numbers S55,544; S55,545, S55,547; and S56,028 were to be served concurrently with one another but consecutively to Brown's previous sentences in Virginia. In addition, the sentence in case number S55,546 was to be served consecutively to the sentences in case number S56,028. The manner of service of these sentences was determined by the trial court at the sentencing hearing.

-3-

**Sentencing Hearing.** At the April 16, 2009 sentencing hearing, the State's only proof was the presentence investigation report, which was entered into evidence. This report showed that Brown had several convictions in Virginia, including three felony drug convictions. Brown provided testimony in his own behalf.

Brown testified that he was twenty-two years old and had a nine-month-old son with a woman he was currently dating. He stated that his son had received a liver transplant and continued to need regular medical care:

> [My son is] supposed to be at a hospital in Nashville once a month but if he catch[es] any kind of cold or anything he has to go back on emergency – like he's been to the hospital the last three weeks, like right now, and he [was] just released yesterday.

Brown stated that he subpoenaed his son's mother to testify at the sentencing hearing, but she was unable to appear because their child had been admitted to the hospital. He stated that he would be willing to live in the residential section of Hay House, a community corrections program. When asked if he had any job prospects, Brown replied, "Not any promises but it wouldn't be a problem for me to find a job." He stated that he had previously worked for his girlfriend's grandfather on the weekends occasionally, but he was not an employee and was paid in cash for his work. The presentence report directly contradicted this claim of prior work. Brown asked the court to consider the following when determining whether he should receive an alternative sentence:

> . . . I would just like to tell the Court that I know what I did was wrong and I shouldn't have done it. I was – I was – I'd like to tell the Court what I did was wrong and I do understand that. I found out I was having a son, I got nervous, I was scared, I want[ed] him to have everything. And . . . I did go – most of the things that he's got now – I messed up and I know people tell you every time that they won't do it again but I really got, I got something to be out there for now and I hope you will be able to give me some help instead of sending me to prison.

On cross-examination, Brown acknowledged several juvenile convictions, including convictions for simple possession of marijuana, theft of property, and aggravated burglary. He claimed he received these juvenile convictions because his mother discovered that he had committed these offenses and called the police. Brown admitted that he had received several convictions in Virginia, including two convictions for cocaine possession and two convictions for failure to appear in 2008. He also admitted that he had several violations of probation in Virginia. Brown stated that he was currently on probation for three years in

Virginia, and Virginia had not yet violated his probation because of the charges in this case.

At the end of the sentencing hearing, the trial court considered the applicable enhancement and mitigating factors. First, the court determined that Brown had a history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. See T.C.A. § 40-35-114(1) (2006). It specifically stressed the fact that Brown had been previously convicted of several drug charges, as well as a failure to appear charge, and that he had a history of cocaine and marijuana use. The court also found that Brown had failed to comply with the conditions of a sentence involving release into the community. See id. § 40-35-114(8) (2006). The court explained:

> [Brown's failure to comply with the conditions of a sentence involving release into the community is] plainly evident from the fact that on January [8], 2007 [he was] placed on 3 years probation in Bristol Virginia Circuit Court, again that was for a 3 year period of time. All these offenses occurred after [he was] placed on probation for those cases. And of course [he had] violations pending on the Virginia side as a result of that, too. So I have to give that a great deal of weight.

The court also noted that Brown was released on bond for the failure to appear charge when he committed the offenses in this case. See id. § 40-35-114(13)(A) (2006). The trial court found that mitigating factor nine applied because Brown had assisted the police in uncovering offenses committed by other individuals or in detecting or apprehending other individuals who had committed offenses. See id. § 40-35-113(9) (2006).

The court concluded that Brown had "a significant history of criminal conduct" and that "measures less restrictive than confinement [had] recently been applied unsuccessfully to [him]." See id. § 40-35-103(1)(A), (C) (2006).

Regarding whether Brown was a proper candidate for community corrections, the trial court stated:

> [Y]ou know, I do find that he does have some history of committing violent offenses. I would argue and submit that disorderly conduct would fit in that category for which he does have a conviction for that; criminal trespass, going on the property of another and remaining there knowing that he didn't have the permission of the person to be there I find fits into that category. Also the facts and circumstances of this aggravated burglary and vandalism and telephone harassment all, in this particular case, all fit into that kind of category. But even if that's – let's just assume that he doesn't have a history

of violence, but as I say, or violent type behavior and I find some of that, I also find the issue where he has an unserved sentence in another state, while it's a violation of probation, he still has a hold on him from another state. That I think creates problems with regard to placing someone into community corrections. And so let's assume then that that also puts him in a situation of where you need to look at special needs and in looking at the special needs, yes, he does have a history of use of alcohol under the age of 21 and even after he turned 21 some of which seems to be a significant amount of alcohol; does have some use of crack cocaine; does have use of marijuana and it appears to be, you know, pretty much on a regular basis. But I don't – I mean I really just see the issue, particularly the crimes that he's admitted to selling cocaine or more, not because of any special drug addiction, I mean it's really a financial decision for him and it appears to be a pattern that has continued over a long period of time. The crimes that occurred in Virginia, he was on probation for those when these occurred. He was out on – a failure to appear in another case when the Virginia cases occurred. I just think that in my opinion, even though I did find a mitigating factor, I just find that based on all these facts and circumstances that confinement is necessary to protect society by restraining the defendant with a long history of criminal conduct when measures less restrictive than confinement have frequently or recently [have] been . . . applied unsuccessfully to the defendant and so I'm going to order him to serve his sentence in the Tennessee Department of Correction[.]

The court then addressed Brown directly regarding the fact that he committed the offenses in this case while on probation in Virginia:

> You know, Mr. Brown, . . . you had opportunities in Virginia when they placed you on probation and that's why they kept you in [that] area was to do what they could to help you successfully complete probation and yet it's not just one offense, its not just two offenses, I mean you've got I guess five different case numbers here, you know, sales of cocaine over a several day period of time, the aggravated burglary and then just felony failure to appear. So in my opinion [it's] just too much and I don't think that based on what I – in my findings with regard to community corrections that community corrections is an appropriate place for you to be as well because I just don't find significant enough special needs to override the need to serve your sentence and because I also have found the fact that you have the hold on you in another state and the fact that there was some violence involved in at least part of the crimes in this case plus you have some prior violent crim[inal] history.

At the conclusion of the sentencing hearing, the trial court denied probation and community corrections and sentenced Brown to an effective sentence of nine years in the Tennessee Department of Correction. Brown filed a timely notice of appeal.

## ANALYSIS

Brown argues that the trial court abused its discretion in denying him an alternative sentence. He acknowledges that he was not a candidate for probation but claims that the trial court abused its discretion in denying him a community corrections sentence. In response, the State contends that Brown's sentences are proper and that the trial court's judgments should be affirmed.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. Id. § 40-35-401(d) (2006). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2006), Sentencing Comm'n Comments. This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court may not disturb the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Because the trial court in this case properly considered the sentencing principles and all relevant facts and circumstances, our review is de novo with a presumption of correctness. See Ashby, 823 S.W.2d at 169.

A trial court, when sentencing a defendant must consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2006); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002); State v. Osborne, 251 S.W.3d 1, 24 (Tenn. Crim. App. 2007), perm. to appeal denied (Tenn. Jan. 28, 2008).

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Under the revised Tennessee Code Annotated section 40-35-102(6)(A) (2006), a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D, or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" A trial court should consider the following when determining whether there is "evidence to the contrary" that would prevent an individual from receiving alternative sentencing:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2006); see also Ashby, 823 S.W.2d at 169.

We note that the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996), perm. to appeal denied (Tenn. Oct. 14, 1996). Where a defendant is considered a favorable candidate for alternative sentencing, the State has the burden of presenting evidence to the contrary. See State v. Bingham, 910 S.W.2d 448, 454 (Tenn.

Crim. App. 1995), <u>overruled on other grounds by</u> <u>State v. Hooper</u>, 29 S.W.3d 1, 9 (Tenn. 2000), <u>perm. to appeal denied</u> (Tenn. Oct. 2, 1995).  However, the defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing.  <u>See</u> <u>id.</u> (citing T.C.A. § 40-35-303(b)).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute.  T.C.A. § 40-35-303(a) (2006).   The trial court shall automatically consider probation as a sentencing alternative for eligible defendants.  <u>Id.</u> § 40-35-303(b) (2006).  However, "the defendant is not automatically entitled to probation as a matter of law."  <u>Id.</u> § 40-35-303(b) (2006), Sentencing Comm'n Comments.  Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant.  <u>See</u> <u>State v. Souder</u>, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citation omitted), <u>perm. to appeal denied</u> (Tenn. Mar. 17, 2003).

Here, Brown entered guilty pleas to nine offenses, including three Class B felonies, one Class C felony, and one Class E felony.  Accordingly, he was not considered a favorable candidate for alternative sentencing.  <u>See</u> T.C.A. § 40-35-102(6)(A) (2006).  Despite this fact, Brown contends that the trial court abused its discretion in denying a community corrections sentence.

The intent of the Community Corrections Act was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders."  <u>Id.</u> § 40-36-103(1) (2006).  Eligible offenders under the Community Corrections Act include:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;

> (B) Persons who are convicted of property-related, or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

> (C) Persons who are convicted of nonviolent felony offenses;

> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(F) Persons who do not demonstrate a pattern of committing violent offenses; and

(2) Persons who are sentenced to incarceration or are on escape at the time of consideration will not be eligible for punishment in the community.

Id. § 40-36-106(a)(1)(A)-(F), (2) (2006). Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right." State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)). Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." T.C.A. § 40-36-106(d) (2006).

In this case, the trial court determined that Brown was ineligible for community corrections, in part, because it considered Brown's prior convictions of aggravated burglary, misdemeanor telephone harassment, and misdemeanor vandalism as violent felony offenses under §40-36-106(a)(1)(E), (F) (2006). We disagree that these convictions, without proof of actual violence, constitute violent offenses to exclude Brown from consideration for community corrections. However, our review of the record supports the trial court's denial of community corrections and imposition of a sentence of confinement in this case.

Here, the trial court expressed concern that Brown's unserved sentence in Virginia would also prevent him from receiving a community corrections sentence in Tennessee. Then the court considered subsection (c) of the Community Corrections Act, known as the "special needs" provision, which states:

Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

Id. § 40-36-106(c) (2006).

First, before being eligible for a community corrections sentence under subsection (c), the offender must be eligible for probation. State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996) (citing State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989); State v. Lanny Crowe, No. 01C01-9503-CC-00064, 1995 WL 392967, at *1 (Tenn. Crim. App., at Nashville, July 6, 1995)). Second, the trial court must determine whether the offender is suitable for placement in the community corrections program by finding the following:

> (1) the offender has a history of chronic alcohol, drug abuse, or mental health problems, (2) these factors were reasonably related to and contributed to the offender's criminal conduct, (3) the identifiable special need (or needs) are treatable, and (4) the treatment of the special need could be served best in the community rather than in a correctional institution.

Id. at 439 (citing State v. Robert Wilson, No. 03C01-9209-CR-00305, 1993 WL 79626, at *5 (Tenn. Crim. App., at Knoxville, Mar. 22, 1993)).

The trial court made specific findings regarding whether Brown was a candidate for community corrections under the "special needs" provision. See id. at 439. Although the trial court acknowledged that Brown had a history of alcohol and drug use, it concluded that Brown sold cocaine not because of his addiction but because it was a "financial decision[.]" In other words, the court determined that Brown's chronic alcohol and drug use was not "reasonably related to and contributed to [his] criminal conduct[.]" Id.

The court further noted that Brown was on probation for convictions in Virginia when he committed the crimes in this case and was out on bond in another case when he committed the offenses in Virginia. The presentence report shows that Brown had fifteen convictions in Virginia over a three-year period, including three felony drug convictions, four violations of probation, and two misdemeanor failure to appear convictions. Ultimately, the trial court determined that confinement was necessary because Brown had "a significant history of criminal conduct" and that "measures less restrictive than confinement [had] recently been applied unsuccessfully to [him]." See T.C.A. § 40-35-103(1)(A), (C) (2006). As previously stated, the record supports the trial court's imposition of a sentence of confinement. Accordingly, Brown's effective nine-year sentence in the Tennessee Department of Correction is proper.

## CONCLUSION

Upon review of the record, we affirm the trial court's judgments.

_____
CAMILLE R. McMULLEN, JUDGE